JAMES ANTHONY a/k/a J. A. McCOY, CALVIN
SMITH AND STANLEY THORNTON
*v.* STATE OF MARYLAND

[No. 28, September Term, 1967.]

130

*Decided February 14, 1968.*

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Robert A. Diemer* for appellant Anthony, *Jerome Stanbury* for appellant Smith, and *William R. Scannell* for appellant Thornton.

*Fred Oken, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *James E. Kenkel, Deputy State's Attorney for Prince George's County,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

At a joint trial held on December 6, 1966, a jury in the Circuit Court for Prince George's County found the appellants, James Anthony a/k/a J. A. McCoy, Calvin Smith, and Stanley Thornton, guilty of shoplifting and grand larceny. Each appellant was thereupon sentenced to a term of six years in the Maryland House of Correction. Their principal contentions on this appeal concern the validity of their arrests and the legality of the search of the automobile in which they had been riding when apprehended.

There was evidence adduced at the trial from which the jury could find that on the afternoon of July 28, 1966 Raymond Meyer, the manager of Webster Clothes Inc., a men's clothing store in the Capital Plaza Shopping Center in Prince George's

County, was alone in his store when appellants Anthony and Smith entered. Appellant Anthony at this time was carrying a large Hecht Company shopping bag, and the pair proceeded to the suit department where appellant Smith tried on several suits. Shortly thereafter, appellant Thornton, who was also carrying a large Hecht Company shopping bag, entered the premises with another man. As Meyer was approaching appellant Thornton, who had gone to the back of the store, the other man, who had entered with Thornton, attracted Meyer's attention by inquiring of him the price of a certain bottle of cologne. At this time, appellants Smith and Anthony were still in the suit department. Thereupon all four men proceeded to move toward the exit where Meyer approached them and asked if he could help them out with the merchandise they had in their shopping bags. The men denied having anything in the bags, and left the store at the same time. Immediately after their departure, Meyer counted the suits on a rack which he considered a possible target of theft and discovered that three suits were missing. Meyer testified that he had counted the suits in that rack "within an hour or so beforehand." He then called the Prince George's County Police to report the theft. The police dispatcher, acting on information supplied by Meyer, alerted all police cars that a larceny of four to five suits had occurred at the Webster Men's store in Capital Plaza, and that the suspects were four colored males, nineteen to twenty-one years of age, two of whom wore dungarees, one of whom wore plaid Bermuda shorts, and one of whom wore a purple shirt. Officer Robert J. Edwards, hearing this information while driving in his police vehicle on the Baltimore-Washington Expressway near Capital Plaza, remembered that a short time before he had observed a colored male standing beside a Corvair automobile on the rear parking lot at Capital Plaza. Officer Edwards headed toward Capital Plaza where he observed the same Corvair pulling out of the parking lot with five Negro males in it. He followed the Corvair for about two miles, noting that one of the occupants was wearing a purple shirt, and that the driver was the same man he had seen standing beside the car in the parking lot earlier. Officer Edwards stopped the Corvair and approached it on foot, whereupon he observed that, of the

three men in the back seat, two wore dungarees and one wore plaid shorts. Officer Edwards testified that the three appellants were among the occupants of the car. After approaching the car, the officer asked the driver, Richard Bynum, to produce his driver's license and vehicle registration card. When Bynum failed to produce his registration card, Officer Edwards had the vehicle impounded for lack of proof of ownership. A tow truck was summoned to take the Corvair to the Hyattsville station of the County Police Department, while another police cruiser came to take the occupants. Edwards testified that he did not formally arrest or charge the five men at this time, but that, had any of them tried to leave, he would have been stopped.

When they arrived at Hyattsville, the three appellants, together with the other passenger, were taken to the Squad Room of the Uniform Division. Bynum, the driver, was taken to the Detective Bureau where he was asked about the ownership of the car he had been driving by Detective James Fitzpatrick. A check with the authorities substantiated that Bynum in fact owned the vehicle. At this time, Mr. Meyer from the Webster store arrived at the station, and Detective Fitzpatrick took him to the Squad Room where he identified the four subjects as being the men he had observed in his store earlier. They were then formally charged with larceny. Detective Fitzpatrick then returned to the Detective Bureau where he advised Bynum of his right to remain silent and of his right to counsel. The officer then requested that he be allowed to look in Bynum's vehicle. Bynum consented to the search and signed a waiver statement indicating his consent which was introduced into evidence at the trial. Although each of the appellants testified that Fitzpatrick had told Bynum that if he would not consent to the search, he would rip the trunk open, Fitzpatrick testified that no threats, promises, or inducements were made to Bynum and that none of the appellants were present when he had discussed searching the car. Bynum signed the waiver document approximately fifteen minutes after he had arrived at the station.

After consenting to the search, Bynum was taken to the parking lot adjacent to the station where he, in the presence of Fitzpatrick, Mr. Meyer, and Detective Salter, opened the trunk of the car with his key. Inside the trunk they discovered two large

Hecht Company shopping bags containing two suits each. Detective Fitzpatrick pulled the suits from the bag; they had Webster's labels and tickets on them. Mr. Meyer identified the suits, and they were received into evidence at the trial.

Appellants contend that their arrests were illegal and that the ensuing search of the vehicle in which they were passengers was likewise illegal since they did not consent to it, and are not bound by the owner Bynum's consent to search the vehicle; and that, in any event, Bynum's consent to search was not voluntarily given.

On the record before us, we hold that the arrest of the appellants occurred when Officer Edwards stopped the Bynum vehicle and removed appellants to police headquarters. That the officer then had probable cause to believe that a felony had been committed and that the appellants had committed it is too clear to require extended discussion; suffice it to note that Edwards, as a member of the police team investigating a reported crime, had specific and reliable information from which he concluded that the felony of grand larceny had been committed and that persons matching appellants' description had committed it. See *Michaels v. State,* 2 Md. App. 424; *Lamot v. State,* 2 Md. App. 378. The arrest being lawful, the police could, as an incident thereto, search the vehicle in which appellants were passengers at the time of their arrest. *Knotts v. State,* 237 Md. 417; *Barton v. State,* 2 Md. App. 52; *Gaudio v. State,* 1 Md. App. 455. And while ordinarily a search of a motor vehicle can be incident to an arrest only if it is substantially contemporaneous therewith and is confined to the immediate vicinity of the arrest, *Preston v. United States,* 376 U. S. 364, *Wilson v. State,* 2 Md. App. 210, in some circumstances a search may be deemed incident to an arrest, although not conducted at the scene of the arrest, when it is made with reasonable promptness at a police station to which the vehicle was towed immediately following the arrest. Thus, in *Arwine v. Bannan,* 346 F. 2d 458 (6th Cir.), it was held at page 470-471 that the arrest and warrantless search of the defendant's car at a police garage more than three hours after his arrest was nevertheless incident to his arrest since the arrest and search were "units of an integrated incident." In *Price v. United States,*

348 F. 2d 68 (D. C. Cir.), the search of the defendant's car was made after it had been impounded in the police parking lot following his arrest and transportation to the police station. The court, in upholding the search, said at page 70 that it was "part of a continuing series of events which included the original arrest and continued uninterruptedly as lawful police investigation and action." In *Trotter v. Stephens,* 241 F. Supp. 33 (E. D. Ark.), the search of the defendant's automobile outside of the jail to which he had been taken following his arrest was held valid, though made several hours after his arrival, the court there ruling at page 41 that the car had been obtained incident to and contemporaneous with defendant's arrest, and that the subsequent search thereof was "merely part of one continuous act." In *United States v. Theriault,* 268 F. Supp. 314 (W. D. Ark.), the search of the defendant's truck outside the police station to which he had been taken after his arrest was upheld, the court there ruling at page 324 that it was part of "an uninterrupted and continuing action of the police initiated by the lawful arrest of the defendant." To like effect, see *Rodgers v. United States,* 362 F. 2d 358 (8th Cir.) ; *Crawford v. Bannan,* 336 F. 2d 505 (6th Cir.) ; *People v. Webb,* 424 P. 2d 342 (Calif.) ; *People v. Robinson,* 402 P. 2d 834 (Calif.) ; *State v. Wilson,* 424 P. 2d 650 (Wash.) ; *State v. McCreary,* 142 N. W. 2d 240 (S. D.) ; *State v. Wood,* 416 P. 2d 729 (Kan.) ; *State v. Putnam,* 133 N. W. 2d 605 (Neb.). It is true, of course, that the rule authorizing a warrantless search of a motor vehicle incident to a lawful arrest is usually justified on the basis of the need of the police to seize weapons and other things which might be used to assault an officer or effect an escape, as well as the need to prevent the destruction of evidence of the crime—considerations of no real applicability where, as here, the suspects and their vehicle were safely in police custody at the time of the search. But as we observed in *St. Clair v. State,* 1 Md. App. 605, 612, and more recently in *Lewis v. State,* 2 Md. App. 678, these basic reasons justifying a warrantless search incident to a valid arrest are not exclusive, nor do they operate to override the ultimate test governing the validity of a search and seizure without a warrant, *viz.,* whether under the facts and circumstances present in each

case, the search was reasonable under the Fourth Amendment. We hold—on the facts and circumstances of this case—that the search of the Bynum vehicle without a warrant, undertaken within approximately one hour after it had been towed to police headquarters, and for the sole purpose of discovering evidence connected with a known crime for which appellants had been arrested, was valid within the rationale of the *Arwine, Price, Trotter, Theriault,* and other cited cases, on the ground that it was made incident to and substantially contemporaneous with appellants' lawful arrest. Our conclusion makes it unnecessary to consider the question of whether Bynum's consent to search the vehicle was binding upon appellants or, conversely, whether appellants, as lawful occupants of the Bynum vehicle, had standing to object to the search, notwithstanding Bynum's consent thereto. See, however, *Carter v. State,* 236 Md. 450; *Kleinbart v. State,* 2 Md. App. 183.

Appellants next contend that the State failed to prove one of the essential elements of the crime of larceny; namely, ownership of the goods allegedly stolen. We cannot agree. Meyer identified the suits taken from the trunk of Bynum's car, which had Webster's tags affixed to them, as the suits "taken from the store that I manage at Capital Plaza." It was established by the testimony of Louis Feldman, who identified himself as Secretary of Webster Clothes Inc., that Meyer was the manager of the store which the corporation owned in Capital Plaza. We think that this evidence was legally sufficient to support a finding that the suits in question were owned by Webster Clothes Inc., a body corporate.

Appellants further contend that the trial judge, in stating to the jury, after final arguments of defense counsel had been concluded, disagreed with their version of the law relating to the right of the police to search the car under the consent given by Bynum went beyond the bounds of mere disagreement with counsel and he became, in effect, an advocate for the State, so much so that his action was tantamount to withdrawing the issue of the legality of the search from the jury's consideration. We find no substance to this contention, since we think that the court's remarks to the jury expressing disagreement with the legal principles espoused by the appellants in closing argu-

136

ment were in no way prejudicial to them under the facts of this case; and amounted, in the ultimate analysis, to nothing more than an indication that the court's understanding of the law was different than that of the appellants. So viewed, we see no error. *Wilson v. State,* 239 Md. 245; *Schanker v. State,* 208 Md. 15. That the trial judge did not advise the jury that his remarks were advisory only is of no consequence, since his basic instructions so advised the jury. We further hold that appellants' contention that the court should have informed counsel in advance of his post-argument remarks to the jury as to the intended substance thereof is equally without merit, there being no requirement that the court advise counsel as contended for by appellants. The court's basic charge to the jury was made prior to and not after arguments of counsel and its post-argument remarks were not inconsistent with its charge. See Maryland Rule 756 d.

Finally, appellants raise additional contentions in proper person, none of which were raised or decided below. They are, therefore, not properly before us. Maryland Rule 1085.

*Judgments affirmed.*