# WILLIAM J. CORNISH AND GEORGE GILMAN
## *v.* STATE OF MARYLAND

[No. 23, September Term, 1968.]

168

*Decided March 4, 1969.*

*Marshall A. Levin,* with whom were *Edelman, Levin, Levy,* and *Rubenstein* on the brief, for appellants.

*H. Edgar Lentz, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Robert S. Fertitta, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

Appellants were convicted by the court sitting without a jury of the misdemeanor of unlawfully possessing unstamped (untaxed) cigarettes in violation of Maryland Code, Article 81, Section 438, and each was sentenced to one year under the jurisdiction of the Department of Correction, the sentences being suspended upon payment by each appellant of a $1,000.00 fine. The appellants contend on this appeal that as they were

illegally arrested by the police, the search of their vehicle, and seizure of cigarettes therefrom, was unlawful and that the evidence so obtained was improperly admitted over their objection at the trial.

John Cooney, Chief of the Maryland Tobacco Tax Unit, testified at the trial that at about 4:25 p.m. on April 25, 1967, he received information from a "reliable informant" that a 1967 black Chevrolet, bearing New Jersey license #LBG 549 was pulling a Nationwide trailer bearing Nebraska license #30-7452 and had left Rocky Mount, North Carolina at 12:25 p.m. that day, headed north "carrying untaxed cigarettes." The informer further advised Cooney that the operator of the vehicle when it left North Carolina was the appellant William Cornish and his passenger was the appellant George Gilman and that both men were from Livingston, New Jersey. Cooney testified that he had used the informer "many times" over a period of several months, "at least several times a week," and that in each instance the information was acted upon and "in each apprehension the information proved to be factual as given to us." Upon receiving this information, Cooney promptly called the Maryland State Police and requested that a teletype message be sent out to police throughout the State of Maryland.

Officer John Posko of the Baltimore City Police Department testified that at 6:50 p.m. on April 25, 1967 he was in uniform and on duty in his marked patrol car when he heard the following teletype message over his police radio:

> "Approximately 1300 hours this date a 1967 black Chevrolet, New Jersey, LBG 549, pulling a Nationwide Trailer with Nebraska 30-7452, operated by William Cornish, address Livingston, New Jersey, passenger believed to be George Gilman carrying 5000 cartons of untaxed cigarettes when they left North Carolina. John A. Cooney, Chief Maryland Tobacco Tax—"

Posko testified that at 7:00 p.m. he observed the vehicle described in the teletype message; that he followed it through the streets of Baltimore until it stopped; that the driver, later identified as the appellant Gilman, emerged from the vehicle and

asked him (Posko) for directions; that at that time there was no passenger in the vehicle, but another man, later identified as the appellant Cornish, soon appeared and acknowledged that he was traveling with Gilman; that upon request Gilman displayed his driver's license and Cornish produced the registration card for the vehicle; and that he (Posko) then asked what was in the trailer and appellant Gilman said "they had some cigarettes in the trailer and they were making a delivery for a friend." Officer Posko further testified that as the vehicle and its occupants fit the description which had been aired over the police radio, he placed the appellants under arrest. Cooney was then notified, and appellants' vehicle was moved by police tow truck to the police station where it was searched and 1320 cartons of untaxed cigarettes were seized from the trailer. The search of the vehicle was conducted approximately one hour after appellants' arrest.

## I

Section 431 of Article 81 of the Maryland Code imposes a tax on cigarettes possessed or held in this State by any person after July 1, 1958. Certain exemptions from the tax are provided by Section 432, among which is that the tax shall not be applicable to cigarettes while being transported under such conditions that they would not be deemed contraband under Section 455. In conjunction with Section 463, Section 438, under which appellants were convicted, makes it unlawful (with certain enumerated exceptions not here pertinent) to possess untaxed cigarettes in this State. Section 439 creates a presumption that cigarettes possessed or held in Maryland are subject to the tax "unless and until the contrary is established, and the burden of proof that such cigarettes are not taxable hereunder shall be upon the possessor thereof." Section 455 provides that every person "who shall transport cigarettes not bearing Maryland cigarette stamps, upon the public highways, roads or streets of this State shall have in his actual possession invoices or delivery tickets for such cigarettes, which shall show the true name and address of the consignor or seller, the true name of the consignee or purchaser, and the quantity and brands of the cigarettes so transported." Section 455 further provides, *inter alia,* that if the person so transporting the cigarettes does not have

the required invoice or delivery tickets in his possession, the cigarettes shall be deemed contraband and, together with the vehicle transporting them, subject to confiscation. Violation of Section 455 constitutes a felony.

In *State v. Sedacca,* 252 Md. 207, the Court of Appeals held "that Section 455 is an important provision for the enforcement of the cigarette tax and taken together with the presumption established by Section 439, it applied to all unstamped cigarettes transported on the State's highways so that invoices or delivery tickets were required for all unstamped cigarettes whether or not they might be ultimately determined to be subject to exemption under the statute." One of the questions before the Court in *Sedacca* was whether Section 455 was unconstitutional on its face as being too vague and indefinite to create a criminal offense. In upholding the constitutionality of that Section, the court noted that *"It is the failure of the transporter of unstamped cigarettes to have in his actual possession the invoices or delivery tickets with the required information which is the crime established by Section 455";* that it should be clear to a person of common intelligence construing Section 455 that if he is transporting unstamped cigarettes through (or into) Maryland, he must have the required documents or be guilty of the criminal offense created by that Section; and that requiring the possession of the prescribed documents was necessary "for the safeguarding of the State's vital interest in preventing the diversion of cigarettes into illicit channels of trade in Maryland where the State would be unable to collect its tax."

It is entirely clear from the record that Officer Posko arrested the appellants on the basis of the information provided by the police teletype message, coupled with appellant Gilman's prearrest admission that he was carrying cigarettes in the trailer to deliver "for a friend." And as the officer testified, he believed at the time he made the arrests that it was a felony to haul untaxed cigarettes in Maryland, although he also knew that it was not a crime to do so if the transporter had the requisite invoice or delivery tickets in his possession. The officer testified that he did not ask appellants for these documents prior to arresting them, nor did the appellants produce or make any attempt to produce them. The trial court found that the officer had prob-

able cause to stop appellants' vehicle, that the arrests were lawful as being based on probable cause to believe that appellants had committed a felony under Section 455, and that the subsequent search without a warrant of the vehicle was valid as being incident to a lawful arrest.

In view of Officer Posko's admitted failure to ascertain whether the appellants had the requisite invoice or delivery tickets in their possession prior to their arrest, appellants contend that the warrantless arrests were unlawful because the officer did not have probable cause to believe that they had committed a felony, nor probable cause to believe that they were committing a misdemeanor in his presence or view; that in no event could the search of their vehicle be deemed incident to a valid arrest since it was not conducted contemporaneously with the arrest, as required by *Preston v. United States,* 376 U. S. 364; that in no event could probable cause to arrest be shown since the information upon which the arrest was based came from an informant whose reliability was never established; and that Gilman's pre-arrest admission to Officer Posko that they were carrying cigarettes was erroneously admitted at the trial since he was not advised of his constitutional warnings under *Miranda v. Arizona,* 384 U. S. 436, until after he was arrested.

On the record before us, we hold that the warrantless arrest of the appellants was lawful, either on the ground that the arresting officer had probable cause to believe that they were transporting untaxed cigarettes in Maryland without possessing the requisite documents in violation of Section 455, or that the officer had probable cause to believe that appellants were committing, in his presence or view, the misdemeanor of possessing untaxed cigarettes in violation of Section 438. See *Robinson v. State,* 4 Md. App. 515; *Duckett v. State,* 3 Md. App. 563; *Salmon v. State,* 2 Md. App. 513; *Lamot v. State,* 2 Md. App. 378. The rule of probable cause is a non-technical conception of a reasonable ground for belief of guilt requiring less evidence for such belief than would justify a conviction, but more evidence than would arouse a mere suspicion. *Edwardsen v. State,* 243 Md. 131; *Leatherberry v. State,* 4 Md. App. 300. In other words, an officer is not required to have sufficient evidence to

convict at the time of the arrest, but only probable cause, *Terrell v. State,* 3 Md. App. 340, or, as stated by the Supreme Court in *Spinelli v. United States,* 391 U. S. 933, decided January 27, 1969, "only the probability, and not a prima facie showing of criminal activity is the standard of probable cause."

Had Officer Posko actually known at the time he confronted appellants that they did not have the necessary invoice or delivery tickets in their possession, he would have had evidence sufficient in itself to support a conviction under either Section 455 or Section 438. *Sedacca v. State, supra.* We think it clear, therefore, that the mere fact that he did not ascertain whether appellants had such documents in their possession does not, under the circumstances of this case, compel the conclusion that he did not have probable cause to make an arrest for the felony of fense or for the misdemeanor of unlawfully possessing untaxed cigarettes then being committed in his view or presence. That probable cause to make a warrantless arrest may originate from a report received over a police radio system is well settled. *Hopkins v. State,* 239 Md. 517; *Farrow v. State,* 233 Md. 526; *Darby v. State,* 3 Md. App. 407. The information received by Officer Posko over his police radio was both specific and detailed, its clear implication being that the transportation of such cigarettes into Maryland would be unlawful as the transporters did not have the requisite documents prescribed by State law. The officer verified the identity of the vehicle, its occupants, and the fact that its cargo was cigarettes. Being thus in possession of confirmed information that the vehicle was coming from North Carolina and was carrying a load of untaxed cigarettes, and being told upon inquiry by the vehicle's occupants that they were making delivery "for a friend," we think the officer had probable cause to believe, without more, that the possession of such cigarettes was in violation of Maryland law. And in so concluding that probable cause existed, we think it proper to consider the fact that appellants failed to produce the requisite invoice or delivery tickets prior to the arrest, for the statutory presumption created by Section 439, *viz.,* that the cigarettes are subject to the Maryland tax until the possessor proves to the contrary, inures to the benefit of the arresting officer, irrespective of whether he fully appreciated its legal effect. On the rec-

ord before us then, we conclude that there was probable cause to arrest appellants either for a felony under Section 455 or for the misdemeanor (committed in the officer's presence or view) under Section 438.

We further hold that appellant Gilman's pre-arrest admission that he possessed cigarettes was not made in response to a "custodial interrogation" within the meaning of *Miranda v. Arizona, supra.* See *Myers v. State,* 3 Md. App. 534; *Duckett v. State, supra; Gaudio v. State,* 1 Md. App. 455.

As the arrest was lawful, the police were entitled, incident thereto, to search the vehicle for evidence of the crime for which the arrest was made, and the fact that the search did not occur at the precise time and place of the arrest, does not render it invalid under *Preston* where, as here, the search was made within an hour after the arrest at the police station. See *Anthony v. State,* 3 Md. App. 129, and *Lewis v. State,* 2 Md. App. 678, and cases therein cited. See also the Annotation at 19 A.L.R. 3d 727-812, entitled *Modern Status of Rule As To Validity of Nonconsensual Search and Seizure Made Without Warrant After Lawful Arrest As Affected By Lapse of Time Between, or Difference in Places of, Arrest and Search; Bartlett v. United States,* 232 F. 2d 135 (5th Cir.); *Campbell v. United States,* 289 F. 2d 775 (D.C. Cir.); *Fraker v. United States,* 294 F. 2d 859 (9th Cir.); *Reagan v. State,* 4 Md. App. 590; *Terrell v. State, supra.*

Independent of the question of the legality of appellants' arrest and whether the subsequent search of their vehicle could lawfully be justified as being incident thereto, the rule is well established that because of its mobility, a motor vehicle, unlike a home, may lawfully be searched without a warrant or previous arrest when the officer has probable cause in the constitutional sense to believe that the vehicle contains that which is subject to seizure, whether it be contraband, as here, or the fruits or instrumentalities of a crime. *Dyke v. Taylor Implement Mfg. Co. Inc.,* 391 U. S. 216, 20 L.Ed.2d 538; *Brinegar v. United States,* 338 U. S. 160; *Scher v. United States,* 305 U. S. 251; *Husty v. United States,* 282 U. S. 694; *Carroll v. United States,* 267 U. S. 132; *Sweeting v. State,* 5 Md. App. 623. *Cf. Cooper v. California,* 386 U. S. 58. As the record shows the existence

of probable cause to believe that appellants' vehicle was carrying contraband cigarettes, the search thereof could also be justified under this rule.[1]

Where, as here, the legality of the arrest and/or search of appellants' vehicle depends upon the existence of probable cause —and the original source of the information upon which the arresting officer acted is based on a statement of an undisclosed informant, the rule is that such information, together with the officer's personal knowledge, may serve as a proper basis upon which to predicate probable cause so long as it is shown with specificity what the informer actually said and why the officer thought the information was credible; and it is further shown that such information was sufficiently reliable and reasonably trustworthy to give the officer, as a prudent man, probable cause to believe that the accused had committed or was committing an offense. *McCray v. Illinois,* 386 U. S. 300; *Draper v. United States,* 358 U. S. 307; *Brinegar v. United States, supra; Mullaney v. State,* 5 Md. App. 248; *Hundley v. State,* 3 Md. App. 402.[2]

Thus, in *Draper v. United States, supra,* the Supreme Court held that in testing the sufficiency of probable cause for a warrantless arrest, the arresting officer may rely upon information received through an informant, rather than upon his direct observations, so long as the informer's statement is reasonably corroborated by other matters within the officer's knowledge. In that case, a "special employee" of the Bureau of Narcotics (in

---

1. In apparent recognition of this rule, Section 455 authorizes any peace officer to stop any vehicle if he "has knowledge or reason to suspect" that the vehicle is carrying untaxed cigarettes without the prescribed documents. In *Gaudio v. State, supra,* we held that the words "reason to suspect" meant "probable cause."

2. In *Mullaney,* we stated the rule to be that where the arrest is initiated on hearsay information received from an informant, the State, to establish its legality where challenged, must sufficiently inform the trial judge of some of the underlying circumstances from which the informant concluded that a crime was being or had been committed by the person to be arrested, and some of the underlying circumstances from which the police concluded that the informant, whose identity need not be disclosed, was credible or his information reliable. See also *Spinelli v. United States, supra; Beck v. Ohio,* 379 U. S. 89.

reality a paid government informer), who had previously given reliable information, told federal agents that the defendant, whom he described, was peddling narcotics, and that he would be at a designated place on a designated date with a tan zipper bag and would be carrying narcotics. The defendant, being observed by federal agents under conditions which accorded precisely with this information, was arrested and the arrest was upheld solely upon the informant's detailed statement that the defendant was peddling narcotics, as corroborated by the fact that the informant's description of the defendant's appearance, and of where he would be at a particular time—matters in themselves totally innocuous—agreed with the arresting officer's observations (thus providing a substantial basis for crediting the hearsay).

In light of *Draper*, which we find particularly apposite to the facts of the present case, we find no merit in appellants' contention that the reliability of the State's informant was not satisfactorily established.

## II

Appellants also contend (a) that the statutory presumption created by Section 439 is unconstitutional in that it shifts the burden of proof from the State to the accused, and (b) that in view of the Commerce Clause of the Federal Constitution, the State cannot require carriers of goods in interstate commerce to possess the documents designated in Section 455, and (c) that Congress, by 15 U.S.C.A. 375-378, has comprehensively regulated the interstate shipment of cigarettes for the purpose of preventing avoidance of state tobacco tax laws and consequently has preempted the field to the exclusion of state legislation on the subject.

The same contentions were raised and found to be without merit by the Court of Appeals of Maryland in *Sedacca v. State, supra,* and require no further discussion.[3]

*Judgments affirmed.*

---

**3.** See, however, *People v. Asta,* 60 N.W.2d 472 (Mich.).