JAMES THOMAS SUTTON, HENRY LEE SUTTON, ALLEN PLAYER, AND LEVERN EDWARD PLAYER *v.* STATE OF MARYLAND

[No. 101, September Term, 1969.]

*Decided December 9, 1969.*

286

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*William O. E. Sterling* for appellants.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Joseph D. Weiner, State's Attorney for St. Mary's County,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

James Thomas Sutton, Henry Lee Sutton, Allen Player and Levern Edward Player, the appellants, were jointly tried by a jury in the Circuit Court for St. Mary's County, Judge Philip H. Dorsey, Jr. presiding. Both Suttons were convicted of grand larceny and sentenced to a term of four years. Both Players were convicted of breaking with intent to steal goods valued at more than $100. and were sentenced to a term of six years. Facts necessary to decide each contention are set out separately.

## I   The Legality of the Search

On November 19, 1968, at or about 3:15 A.M., Trooper Charles O. Lawrence noticed a 1959 black Ford on which the left taillight and the tag light were out. A summary

of his testimony follows: As he was within one thousand feet of the vehicle, he noticed that the driver switched seats with the passenger seated in the right front. Upon seeing this, Trooper Lawrence called for assistance. After the car was stopped and other troopers arrived, Trooper Lawrence noticed a television in the back seat, a typewriter and tape recorder in the front seat and numerous other articles. When questioned about these articles, the Sutton brothers explained that they were transporting the articles for the Player brothers. The Player brothers stated that they did not know anything about the articles, that they had been hitchhiking, and that the Sutton brothers had picked them up. The items in the car had numerous markings on them, and the tape recorder had "Mechanicsville No. 2" marked on the back. No search was undertaken as all the items were viewed from the outside of the car with the aid of a flashlight. After a conference among the troopers, it was decided to take the four appellants to the Waldorf Barracks for further questioning with reference to the articles in the car. At the Waldorf Barracks, the troopers were advised of a breaking and entering at a school in Mechanicsville in St. Mary's County.

Trooper Kenneth C. Weinreich, one of the troopers who responded to the call for assistance, testified slightly differently stating he felt he had reasonable grounds to make a search at the highway and thus proceeded then to inventory the items in the car. His specific testimony was as follows:

"A. I advised Trooper Lawrence that we should check the articles in the car and get the serial numbers, makes and models of the articles in the car of which, at the time, I started a list on a 3 by 5 card which is what I hold in my hand now.

"Q. What articles were in the car, Officer?

"A. At the time I only got to a typewriter, Royal make, serial No. KHM 2203446 serial number.

"Q. Where was it? Do you recall what type it was?

"A. Yes, sir. It was on the right front floor-board. There's also a Panasonic tape recorder on the front seat between the operator and the right front passenger. On this was 'Mechanicsville No. 2' on the front. It was a model RQ-555, serial No. 6688. At this time, with the observation of 'Mechanicsville No. 2' it was decided to hold the occupants and operator of the vehicle and transport them to the Waldorf Barracks for questioning as to the articles in the car. There was a discussion between the other troopers at this scene and the occupants and operator of the '59 Ford. As to the conversation I was not close enough to hear much, if any, of it.

"Q. What other articles do you have on that paper?

"A. The other articles were taken out of the vehicle in the Barracks 'H' Waldorf Barracks' garage in the center bay. Due to the coldness of the weather we put it in the garage and the convenience of the lighting, whereby I took out an Ealing Film Loop, Super Technicolor Projector, model No. 810, serial No. 213946H.

"Q. Where was that article at?

"A. This was on the floorboard in the right rear of the vehicle. It also had 'Mechanicsville' on the back of it. Also on the floorboard in the right rear was a Standard Projector, Model No. 500-C2, Serial No. 37519. Also, which I stated earlier, was a General Electric UHF-VHF television. The body was of metal. It was of a tannish-beige color with an off-white rim around it. I did not take the serial number of this, nor the model number. From there I went to the rear of the vehicle. It was asked if anyone had the keys to the trunk. I had gone inside where

the defendants were. They came out and the operator, James Sutton, attempted to open the trunk voluntarily and without coerce or any threats or promises to him to open the trunk. His attempts failed. He offered the key to me. I attempted twice and was unable to get it open. He asked for a crowbar, said he would willfully pry open the trunk. Due to some black cordage hanging out of the trunk, the lid was rather tight against the lock. We did not get a crowbar or any implement for prying it open. Trooper Lawrence attempted to open it and failed also.

"At this time, I asked for the keys back. I faced the lock and asked Trooper Lawrence to push down on the trunk as hard as he could. This time the trunk did have enough leeway and did come open.

"Q. Was the defendant Sutton there at that time?

"A. James?

"Q. James Thomas Sutton.

"A. Yes, sir.

"Q. Were the other defendants there at the time?

"A. No, sir. The other three were in the barracks at the time. This time the other troopers and defendant James Sutton went back into the barracks. I continued my inventory of the vehicle. In the trunk I found an Oscar-Smidth Autoharp. It was black in color and it had some paint speckles. It looked like they were probably aluminum over it and cased. No further description on it, no serial number. This was in the left — this was on the left side of the trunk.

"Also in the trunk were two more General Electric UHF-VHF television sets which I took out also. By some matting where the spare tire

would be, I found one Wollensak 3-M, vinyl-type record case containing one empty Scotch 3-M recorder reel; one Peabody Language Development kit, level No. 1, and the title was Six Favorite Fairy Tales. Also one electric tape recorder connection drop cord. There was also two audio cord for the television and one black extension cord. Of the television sets, I did not take any model or serial numbers. However, I did notice at the time that the television sets apparently had been bolted down by four bolts on the underneath of the case. Apparently, they had been pried since the bolt connections, the holes themsevles had been extended as if they had been pried off and the bolt or screw or attachment device pulled through it. There were scratches as of an instrument used to pry them.

"At this time I checked the other television sets, all of the television sets showed same signs. Also one of them on the back there is a device, a rack, more or less, for winding the extension cord on. One of these was broken. The rack itself was found in the vehicle also in the trunk.

"At this time I went back into the inner part of the vehicle and on the right floorboard in the rear I found one black crowbar, two pairs of pliers, and I'm not sure, but I believe there was also a screwdriver on the floor. . ."

While counsel did object to testimony concerning the merchandise at the trial, citing Maryland Rule 729, there was no objection to the court taking testimony concerning the validity of the arrest in the presence of the jury. Since there was neither objection to this procedure below, nor contention concerning it on appeal, we will not consider whether or not the procedure constituted reversible error. See *Winebrenner v. State,* 6 Md. App. 440, 251 A. 2d 610 and *Robinson v. State,* 4 Md. App. 515, 521, 243 A. 2d 879.

In the recent case of *Johnson v. State,* 8 Md. App. 28, 31, 257 A. 2d 756, we reviewed the current state of the law on searches of automobiles:

> "It is well settled that an automobile, unlike a dwelling. or person, may be searched without a warrant where there is probable cause to believe that the auto harbors 'the instrumentality of a crime or evidence pertaining to a crime.' *Dyke v. Taylor Implement Mfg. Co.,* 391 U. S. 216, at page 221. The right so to search an automobile, or other movable vehicle, does not depend on whether the searching officers first had probable cause to arrest the driver or other occupant. In *Carroll v. United States,* 267 U. S. 132, the first warrantless automobile search case to be decided by the Supreme Court, Chief Justice Taft said:
>
> > 'The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for the belief that the contents of the automobile offend against the law. The seizure in such a proceeding comes before the arrest, * * *.' 267 U. S. at 158-159. .
>
> "Although *Carroll* brought into question the constitutional validity of a federal statute which permitted agents to search automobiles without a warrant where they had probable cause to suspect the carriage of contraband, the fact that the Court found the statute constitutional permitted law enforcement agents to conduct this type of search even where not authorized by statute. Such a search was upheld by the Supreme Court in *Brinegar v. United States,* 338 U. S. 160, where the transportation of liquor was again involved, and the rationale of *Carroll* and *Brinegar* was again approved in *Dyke.*

"*Carroll* and cases following it have been recognized by us as authority for searches of automobiles based only on probable cause. In *Cornish and Gilman v. State,* 6 Md. App. 167, we said:

'Independent of the question of the legality of appellants' arrest and whether the subsequent search of their vehicle could lawfully be justified as being incident thereto, the rule is well established that because of its mobility, a motor vehicle, unlike a home, may lawfully be searched without a warrant or previous arrest when the officer has probable cause in the constitutional sense to believe that the vehicle contains that which is subject to seizure, whether it be contraband, as here, or the fruits or instrumentalities of a crime.' 6 Md. App. at 175.

"To like effect, see *Laws and Dorman v. State,* 6 Md. App. 243; *Sweeting v. State,* 5 Md. App. 623."

In the instant case, as in *State v. Sedacca,* 252 Md. 207, 249 A. 2d 456, the vehicle was lawfully stopped for a traffic violation. After stopping the vehicle, the officers gained sufficient information simply by looking through the car windows with a flashlight, as in *Sweeting v. State,* 5 Md. App. 623, 249 A. 2d 195, to justify further searching. Since the officers were in a place where they had a right to be (a public road) at the time they saw the stolen merchandise, it is unimportant that the observations were not made for purposes of prosecuting the traffic violation. While the record here is unclear whether or not any motor vehicle violations were prosecuted, the actual giving of a traffic ticket does not affect the legality of the search. See *Sweeting v. State, supra,* 5 Md. App. at 626, 249 A. 2d at 197.

The appellants rely on *Brown v. State,* 5 Md. App. 367, 247 A. 2d 745 holding that absent information concern-

ing the actual commission of a crime, the officer lacked reasonable grounds to suspect certain goods observed by him under suspicious circumstances were stolen. The present case is more like *Mercer v. State,* 6 Md. App. 370, 251 A. 2d 387 wherein after observing the stolen goods in broad daylight, the officers' suspicions ripened into probable cause when one man fled and the others gave an improbable story concerning the acquisition of the merchandise. In the present case, while there was no flight, there were the additional suspicious circumstances: the hour of the night, the directly conflicting stories by the occupants of the car as to who owned the merchandise, the numerous articles within view, and the way they were crowded into the car. Therefore, the trial judge was not clearly erroneous when he found the officers had probable cause for a warrantless search, and it does not matter which trooper's testimony he believed.[1]

## II   Sufficiency of the Evidence

Appellants contend the evidence was insufficient to support their convictions, alleging particularly the absence of proof of a breaking, citing *Reagan and Edwards v. State,* 6 Md. App. 477, 251 A. 2d 615, and the absence of proof the articles were in the particular school building from which they were stolen. In *Reagan and Edwards v. State, supra,* we reversed because there was no evidence of physical tampering nor evidence that the premises involved had been secured when the last person lawfully on those premises left. In the present case both the sheriff and his deputy testified a wire securing the window to the little boy's bathroom had been broken, and one of them testified the window was "pried open." This physical tampering is sufficient to show a breaking. The contention the goods were not shown to have been in the school which was entered is also without merit. One

1. The appellants make no claim under *Preston v. United States,* 376 U. S. 364, 84 S. Ct. 881, 11 L.Ed.2d 777. We think the search was one continuous search under the principles we discussed in *Anthony, Smith, and Thornton v. State,* 3 Md. App. 129, 238 A. 2d 130.

James W. Copsey testified that he saw a black 1959 Ford with a broken taillight parked about 150 feet from the school about 1:00 A.M. on November 19, 1968, which was two hours before the stolen goods were found in appellants' vehicle, which had a broken taillight. Expert testimony showed the paint on the crowbar in appellants' vehicle was similar to paint on the school's coke machine. The appellants' vehicle was equipped on the rear with one snow tire and one regular tire. Tire tracks made by a vehicle so equipped were found near the school. Scrape marks on bolts under the car were fresh and matched scrape marks on the concrete curbing at the school. Some of the goods were marked "Mechanicsville School No. 2." It was, therefore, sufficiently proven that the goods in appellants' car came from the school in question. The ownership was established by stipulation.

## III  Right of Confrontation

Finally, the appellants, James Thomas Sutton, Allen Player and Levern Edward Player, complain their constitutional right of confrontation of their accusers was violated by the admission into evidence of the written confession of Henry Lee Sutton wherein Henry Lee Sutton stated all four appellants went to the school, and the two Players entered the building while the Suttons remained outside with the vehicle. Appellants rely on *Bruton v. United States*, 391 U. S. 123, 88 S. Ct. 1620, 20 L.Ed.2d 476 which held it was improper in a jury trial to introduce the statement of a non-testifying co-defendant implicating another. The State contends that since Henry Lee Sutton took the stand and testified, *Bruton* does not apply under our holding in *Lipscomb v. State*, 5 Md. App. 500, 248 A. 2d 491. We think, however, since Henry Lee Sutton in his testimony denied the statement, the other accused were not given an effective right of cross-examination under the reasoning of the Supreme Court in *Douglas v. Alabama*, 380 U. S. 415, 85 S. Ct. 1074, 13 L.Ed.2d 934. The Illinois Court of Appeals in *Hammond v. State*, 6 CrL 2072, filed October 8, 1969

arrived at the same conclusion in a case similar to the case at bar saying:

"The State attempts to distinguish Bruton on the ground that here the alleged confessor (Jackson) took the witness stand in his own behalf (permitting confrontation), whereas in Bruton he did not. We consider that this distinction does not cure the basic problem because in the instant case we must also concern ourselves with the fact that in his testimony Jackson denied having made the alleged inculpatory statements, thus, for all practical purposes, precluding defendant's right of cross-examination. * * *

"The United States Supreme Court, in *Douglas v. Alabama,* 380 U. S. 415, discussed this precise point in a case where an accomplice, found guilty in a separate proceeding, testified at defendant's trial and invoked the privilege against self-incrimination when questioned about his alleged confession. The prosecutor was permitted to read statements from the alleged document of confession that inculpated defendant. The court held this to be prejudicial, saying at pages 419 and 420, that the '[accomplice] could not be cross-examined on a statement imputed to but not admitted by him' and 'hence, effective confrontation of [the accomplice] was possible only if [the accomplice] affirmed the statement as his.' Any effective confrontation of Jackson in the instant case was precluded by virtue of this same reasoning, and the admission of his alleged confession inculpating defendant was prejudicial error. * * *"

It is contended the error cannot be harmless under our holding in *Smithson v. State,* 5 Md. App. 378, 247 A. 2d

542. *Smithson* should be read in light of the subsequent ruling of *Harrington v. California,* 395 U. S. 250, 89 S. Ct. 1726, 23 L.Ed.2d 284 which makes clear that *Bruton* errors can be harmless where the other evidence is overwhelming. See *Ham, et al. v. State,* 7 Md. App. 474, 256 A. 2d 362.

In the instant case all four appellants are found in the joint possession of stolen merchandise approximately two hours after the time of the crime. This fact alone sufficiently supports the convictions of all appellants because the recent exclusive possession of stolen goods permits a rational inference of fact that they were the thieves or the burglars. *McGlothlin v. State,* 1 Md. App. 256, 229 A. 2d 428, *Anglin v. State,* 1 Md. App. 85, 227 A. 2d 364. Indeed they could have each been convicted of both charges since there was no merger. *Tender, et al. v. State,* 2 Md. App. 692, 237 A. 2d 65, n. 5. In addition, there was the strong corroborating evidence set forth above:

> "One James W. Copsey testified that he saw a black 1959 Ford with a broken taillight parked about 150 feet from the school about 1:00 A.M. on November 19, 1968, which was two hours before the stolen goods were found in appellants' vehicle, which had a broken taillight. Expert testimony showed the paint on the crowbar in appellants' vehicle was similar to paint on the school's coke machine. The appellants' vehicle was equipped on the rear with one snow tire and one regular tire. Tire tracks made by a vehicle so equipped were found near the school. Scrape marks on bolts under the car were fresh and matched scrape marks on the concrete curbing at the school. Some of the goods were marked 'Mechanicsville School No. 2.' "

In view of all of this evidence, we have no problem in declaring our belief beyond a reasonable doubt that the statement of Henry Lee Sutton did not contribute to the

298

conviction of the other three appellants. *Chapman v. California*, 386 U. S. 18, 87 S. Ct. 824, 17 L.Ed.2d 705.

Finally, the three appellants allege that the jury's verdict in finding the Players guilty of breaking and entering and the Suttons guilty of larceny clearly indicated the jury followed Henry Lee Sutton's statement in reaching its verdict. That may well be. Since, as pointed out above, the evidence was overwhelmingly sufficient to support convictions of the four appellants on both of the charges, reliance, if any, was unimportant. The fact that the trial judge used the statement in fixing the punishment is likewise unimportant because a trial judge may rely on hearsay evidence in determining sentence. *Baker v. State*, 3 Md. App. 251, 257, 238 A. 2d 561.

*Judgments affirmed.*