## GARLAND THOMAS JONES *v.* STATE OF MARYLAND

[No. 92, September Term, 1970.]

*Decided November 25, 1970.*

422

The cause was argued before ORTH, THOMPSON, and POWERS, JJ.

*Stanley S. Cohen* for appellant.

*Clarence W. Sharp, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Arthur Cheslock, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

## ESTABLISHING CRIMINAL AGENCY

The criminal agency of an accused may be proved directly, as for example by his identification by the victim, *Thomas v. State,* 8 Md. App. 5, or an eyewitness, *Pinkney v. State,* 9 Md. App. 283, or circumstantially, as for example by his possession of stolen goods.[1] The identification of an accused by the victim or an eyewitness may be made judicially or extrajudicially. A judicial identifi-

---

1. The inference arising from the unexplained possession of recently stolen goods has been held to provide evidence that the possessor was the thief, *Davis, et al v. State,* 7 Md. App. 667; the receiver, *Brown v. State,* 8 Md. App. 224; the burglar, *Sutton v. State,* 8 Md. App. 285; the robber, *Metallo v. State,* 10 Md. App. 76.

cation is admissible if it was not tainted by an illegal extrajudicial identification or even if there was an illegal extrajudicial identification, upon the State showing by clear and convincing evidence that the judicial identification had an independent source. An extrajudicial identification is usually by a confrontation of the accused by the prospective identifying witness, as at a line-up, or by the viewing of photographs by such witness. An extrajudicial identifying procedure is legal if the accused has the assistance of counsel when required, *United States v. Wade*, 388 U. S. 218 and *Gilbert v. State of California*, 388 U. S. 263, and, independent of any right to counsel, when the procedure is not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification so as to be a denial of due process of law, *Stovall v. Denno*, 388 U. S. 293; *Simmons v. United States*, 390 U. S. 377. Evidence of the identification of an accused at an illegal extrajudicial procedure is *per se* to be excluded, *Gilbert* at 272-274. However, the improper admission of a judicial identification or of evidence of an extrajudicial identification is not prejudicial error if the introduction was harmless error beyond a reasonable doubt. *Wade* at 242; *Gilbert* at 274. Evidence of an identification at a legal extrajudicial procedure is admissible as corroborative of a judicial identification, and, even absent a judicial identification, as substantive evidence of criminal agency. It may be introduced through the out-of-court declarant or through third parties when the out-of-court declarant is present at the trial and subject to cross-examination. *Smith and Samuels v. State*, 6 Md. App. 59, 63-67.

When identification evidence is challenged, the burden is on the accused to show *prima facie* that the extrajudicial procedure was illegal. If he meets this burden the State must show by clear and convincing evidence that it was legal. There is no obligation on the State in introducing a judicial identification to produce any evidence as to an extrajudicial identification except as it may deem advisable to overcome a *prima facie* showing by the accused

that the extrajudicial identification procedure was illegal. The question of the legality of the extrajudicial identification procedure is solely for the trial court as is the question whether an illegal extrajudicial procedure tainted a judicial identification. But when the judicial identification is ruled admissible, despite the illegality of an extrajudicial identification, the accused may nevertheless cross-examine the State's judicial identifying witness at the trial of the general issue and introduce evidence with regard to the illegal extrajudicial procedure as part of his case. Such evidence so elicited goes to the weight of the judicial identification and the credibility of the identifying witness, properly matters for the trier of fact. *Smith and Samuels, supra,* at 67-70; *Melia and Shelhorse v. State,* 5 Md. App. 354.

## THE INSTANT CASE

Garland Thomas Jones (appellant), John Michael Lee, William Jamison, Jr., and Charles Franklin Simpson were jointly indicted, charged with the robbery of George Schmidt with a deadly weapon and related offenses. Appellant, Lee and Jamison were jointly tried at a bench trial in the Criminal Court of Baltimore. Appellant was convicted of the robbery with a deadly weapon.[2]

Appellant challenged evidence of identification by a motion to suppress. The court received evidence on the issue subject to exception and at the close of all the evidence denied the motion. The State proved the *corpus delicti* of the offense by the testimony of the victim but did not call upon him to identify the felons. When the indictment came on for trial, defense counsel requested that the defendants be seated "somewhere in the courtroom, other than the front bench." The court said it would allow it as long as it did not interfere with the security of the courtroom: "Except today they will not be in a position to elect where they will sit. I will leave it to the jail guard." Al-

---

2. A verdict of not guilty as to each of Lee and Jamison was directed by the court. Simpson, separately tried, was found not guilty.

though the record is not clear, it seems that three men among the spectators were seated on the front bench with the three defendants.[3] Eddie Witt, an eyewitness to the crime, testified for the State. He was asked by the State to look around the courtroom. "I want you if you can, if you can see these people [the robbers] to identify them and point them out." The transcript reads:

> "A. This one right here.
> Q. Which gentleman are you pointing to? Which gentleman are you indicating?
> A. This gentleman right here.
> Q. Tell us what he has on.
> A. He has, he had on a black sweater.
> Q. I mean can you tell us what he has on today?
> A. What he has on today? He has on a green shirt—wait a minute, to be sure, this gentleman up there on the front looks more like —
> Q. Could you walk around and point to this individual. Take your time. * * *
> THE WITNESS: I think it's this man here.
> THE COURT: Stand up."

The man identified was appellant. On cross-examination Witt was asked: "Did you ever have occasion to identify anybody else?" He said he had; "down the police lineup." Defense counsel then noted that the witness had said he *thought* appellant was the man and asked: "Are you absolutely certain this is the man?" The transcript reads:

> "A. I'm certain that's the man.
> Q. You're not thinking now?
> A. I'm not thinking."

It was elicited from the witness that he had not been to a preliminary hearing or to the lineup in this case. On further cross-examination the witness reaffirmed that he was certain appellant was the man he saw robbing Schmidt and it was clear that his identification was posi-

---

3. We point out it would be preferable for the court to designate for the record exactly what was done.

tive. It was also brought out that he had not seen appellant from the time of the robbery until the identification in court; that he had not gone to a lineup in which appellant appeared; and that he had not viewed any photographs of appellant in an identification procedure. However the defense thereafter produced evidence through testimony of police officers that Witt had been shown ten photographs including a photograph of appellant, and had identified Jones.[4] The defense also introduced a "Crime Against Person Report" of the police department which contained the statement: "Both Mr. Schmidt and Mr. Witt were given form #68/309 to view photo's."

The posture of the case was that the State had introduced a judicial identification of appellant through an eyewitness. Although there may have been some equivocation initially, the witness made clear on cross-examination that his identification was positive.[5] The State did not introduce any evidence as to an extrajudicial identification by the in-court declarant, either as corroborative of the judicial identification or as substantive evidence. Evidence as to an extrajudicial identification by the viewing of photographs was adduced by appellant by cross-examination of the State's witnesses and direct examination of its own witnesses. By denying the motion to suppress the trial court found the judicial identification to be admissible. It could have properly found on the evidence that appellant had not met his burden of proving *prima facie* that the photographic viewing procedure violated due process of law. And we find on our independent constitutional appraisal of the evidence that the photographic viewing procedure was not so unnecessarily suggestive and conducive to irreparable mistaken identification as to be a denial of due process of law. Thus it could not taint the judicial identification and there was no error in the denial of the motion to suppress.

4. There was evidence that Witt also identified Jamison and Lee from the photographs shown him.
5. Any lack of positiveness affected the weight of the identification and not its admissibility. *Logan v. State*, 1 Md. App. 213.

## THE RIGHT OF CONFRONTATION

Appellant argues that he "was denied the right of confrontation and cross-examination because a third party was permitted to testify to an extrajudicial identification which the out-of-court declarant denied ever existed." The testimony as to the extrajudicial identification was from witnesses called by appellant in an effort to show the out-of-court identification procedure was illegal and from cross-examination by appellant of the State's witnesses. It was not proffered by the State. Appellant cannot now complain that evidence adduced by him should not have been received. In any event it went only to the question of the legality of the extrajudicial identifying procedure and not to the proof of the criminal agency of appellant. See *Bailey v. State,* 6 Md. App. 496; *Vios v. State,* 5 Md. App. 200. Thus the rule that evidence of an identification at a legal extrajudicial procedure may be received from third parties only when the out-of-court declarant is present at the trial and subject to cross-examination is not here applicable since the State did not introduce it on the general issue. Even so, the fact remains that the out-of-court declarant was present at the trial and was subject to cross-examination. We do not agree that appellant was denied effective cross-examination of the witness merely because he said he had not viewed photographs or made an extrajudicial identification. The circumstances surrounding the extrajudicial procedure were obtained from other witnesses called by appellant. The denial that he made such extrajudicial identification in the light of evidence to the contrary went to his credibility and the weight to be given the judicial identification. But see *Sutton v. State,* 8 Md. App. 285, 295-298, concerning the right of confrontation when confessions are involved.

## DUE PROCESS OF LAW

Appellant urges that "the unique factual and evidentiary situation presented in this case combined to deny [him] due process of law and fundamental fairness." The

heart of this contention is the denial by Witt that he viewed photographs and made an extrajudicial identification. But, as has been seen, appellant was not precluded from fully developing the circumstances surrounding the extrajudicial procedure by testimony of the officers present and by cross-examining Witt, by which, if pursued his memory could perhaps be refreshed. In the circumstance we hold that appellant was not denied due process of law nor was his trial fundamentally unfair.

## SUFFICIENCY OF THE EVIDENCE

The *corpus delicti* of robbery with a deadly weapon was proved and appellant does not claim otherwise. We find that the evidence was also sufficient in law to prove appellant's criminal agency as we have found that Witt's judicial identification of him as one of the robbers was properly admissible. We find no such inconsistency in his testimony as to render it too inconclusive, contradictory, and uncertain to be the basis of a legal conclusion within the ambit of *Kucharczyk v. State*, 235 Md. 334.[6] On Witt's judicial identification, weighed and found credible, the trier of fact found that appellant was the criminal agent. We cannot say that this finding on the evidence was clearly erroneous. Maryland Rule 1086. See *Barnes v. State*, 5 Md. App. 144.

## SPEEDY TRIAL .

Appellant claims he was denied a speedy trial. In oral argument his counsel agreed that the only period chargeable to the State was of 4 months duration, from the end of February to the end of June. We do not find that this period is one of constitutional proportion but even if it were, it is less than substantial, and appellant having demanded a speedy trial, did not show a strong possibility that he was prejudiced by any delay. We find that appel-

---

6. We observe that we think it a reasonable conclusion that when Witt, in answer to whether he ever had occasion to identify someone else, answered that he had "down at the police line-up," he was referring to another case at another time when he attended a lineup. He made clear that he was unable to attend the lineup conducted in the instant case.

lant was not denied a speedy trial within constitutional contemplation. See *Barnett v. State,* 8 Md. App. 35.

*Judgment affirmed.*