803 A.2d 518

**Zi Qiang CHEN**

v.

**STATE of Maryland.**

**No. 124, Sept. Term 2001.**

Court of Appeals of Maryland.

July 19, 2002.

100

Amy E. Brennan, Asst. Public Defender (Stephen E. Harris, Public Defender, and Nancy S. Forster, Deputy Public Defender, on brief) Baltimore, for petitioner.

Gary E. Bair, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland, on brief) Baltimore, for respondent.

Argued Before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, JJ.

BATTAGLIA, J.

We issued a writ of certiorari in this case to determine whether Maryland Code (1988, 1997 Repl.Vol.) Section 12–305(a) of the Tax–General Article, which prohibits the possession of unstamped cigarettes, contains a penalty provision, and whether a person must intentionally violate a known legal duty in order to be guilty of willfully transporting unstamped cigarettes in violation of Section 13–1015 of the Tax–General Article. We determine that the penalty provision for possession of unstamped cigarettes in violation of Section 12–305(a) is found in Section 13–1014 of the Tax–General Article. In addition, we find that willfully transporting unstamped cigarettes requires that an individual intended to transport the

unstamped cigarettes; the statute does not require the individual to have personal knowledge of the fact that he or she is violating the law. Accordingly, we affirm the decision of the Court of Special Appeals.

## I. Facts

On July 11, 2000, Agents of the Field Enforcement Division of the Maryland Comptroller of the Treasury were surveilling the New Church, Virginia area near the border with Worcester County, Maryland, to identify individuals who were purchasing large quantities of cigarettes in Virginia and transporting them into Maryland without the required Maryland stamp evidencing payment of the tax imposed on cigarettes in violation of Maryland Code (1988, 1997 Repl.Vol.) Sections 12–305(a) and 13–1015 of the Tax–General Article. At approximately 4:05 p.m. that day, Agent Timothy Kane spotted a white van with North Carolina license plates parked under the rear canopy of a tobacconist shop called the Peace Token, located on Route 13 a few miles south of Maryland's border with Virginia. Twenty minutes later, Agent Kane observed a man later identified as petitioner, Zi Qiang Chen, rearrange items in the passenger compartment, lock the door, open the tailgate, remove several large, black trash bags, close the door, and enter the Peace Token through a rear entrance. Approximately ten minutes later, Agent Kane watched as petitioner returned to the van carrying a large black trash bag, which judging from its shape, Agent Kane believed contained cases of cigarettes. Petitioner placed the trash bag in the rear of the van.

Petitioner left the Peace Token and drove northbound to the Royal Farms Store located at 2497 Lankford Highway in New Church. Agent Anthony Hatcher observed petitioner leave the Store with a hand cart containing four cases of cigarettes. Agent Hatcher saw petitioner place the cases of cigarettes in black trash bags, load them into the rear of the van, and cover them. Thereafter, petitioner left the Royal Farms Store and made a quick stop across the street at the Dixieland Exxon

gas station and discount cigarette store before continuing to drive north on Route 13.

Agent Kane, accompanied by two other agents, followed petitioner as he crossed into Maryland from Virginia. After approximately ten minutes, Agent Kane activated his emergency equipment and stopped petitioner at the intersection of Route 13 and Perry Road in Somerset County, Maryland. Agent Kane gave the following description of the traffic stop:

I approached the vehicle and identified myself as an agent of the Field Enforcement Division of the Comptroller of the Treasury. I explained to Mr. Chen that I had a reasonable belief that he was transporting cigarettes into Maryland and asked Mr. Chen if he had cigarettes in the vehicle. Mr. Chen replied, "Yes, I have cigarettes." I then asked Mr. Chen if he had any paperwork allowing him to transport these cigarettes. Mr. Chen replied, "I speak little English, but I have cigarettes." Mr. Chen was then asked to exit his vehicle and to stand at the rear of his vehicle. Again Mr. Chen was asked if he had any form of paperwork allowing him to transport his load of cigarettes. Mr. Chen replied, "I don't understand, I have cigarettes."

Petitioner consented to having his vehicle searched by the agents. When the agents opened the tailgate of the van, they found several large black trash bags filled with numerous cases of cigarettes bearing Virginia tax stamps concealed underneath a multi-colored tarp. The agents arrested petitioner at the scene for unlawfully possessing and transporting unstamped cigarettes in Maryland. A subsequent search of petitioner's van at the police barracks in Somerset County revealed 7,190 packs of cigarettes with a total value of $10,471.00. The tax owed to the State of Maryland on these cigarettes totaled $2,145.00.

Petitioner was charged in a criminal information with possession of unstamped cigarettes in violation of Maryland Code (1988, 1997 Repl.Vol.) Section 12–305(a) of the Tax–General Article and with transportation of unstamped cigarettes in violation of Section 13–1015 of the Tax–General Article. On

September 7, 2000, petitioner filed a motion to dismiss the case, or in the alternative, to suppress the evidence seized from his van. At the motions hearing held on December 18, 2000, petitioner challenged the constitutionality of Section 12–305(a) of the Tax–General Article, arguing that a person of ordinary intelligence could not ascertain what conduct is permitted or prohibited under the statute. Petitioner also asserted that he was not "transporting" the cigarettes within the meaning of the word as used in Section 13–1015 of the Tax–General Article, nor were the cigarettes at issue "unstamped" as set forth in Section 12–305(a) of the Tax–General Article. The trial court found no merit in petitioner's arguments and concluded that the agents had probable cause to stop and search petitioner's van. Accordingly, the trial court denied petitioner's motions. Thereafter, petitioner entered a plea of not guilty to both counts and elected to be tried by the court.

On January 10, 2001, the case proceeded to trial on an agreed statement of facts. The statement contained the following summary of that which petitioner would have testified:

The defendant would testify that he was traveling through the State of Maryland on his way to another state when he was stopped by the Maryland agents. And his testimony would further be that at no time were the cigarettes intended for use, distribution or sale into or within the State of Maryland.

The trial court found petitioner guilty on both counts and merged the counts for sentencing purposes. The court imposed a fine of five dollars per each carton of cigarettes for a total of $3,595.00 plus court costs of $448.00 and a public defender's fee of $257.00.

On January 18, 2001, petitioner filed an appeal with the Court of Special Appeals, asserting that Section 12–305 of the Tax–General Article has no effect because it lacks a penalty provision and that the State failed to produce evidence at trial which demonstrated that he knew that transporting unstamped cigarettes into Maryland was illegal. The Court of Special Appeals found petitioner's assertion that Section 12–

305 was without force or effect because it does not contain a penalty provision was unmeritorious. *See Chen v. State,* 141 Md.App. 123, 135, 784 A.2d 641, 648 (2001). The court concluded that the penalty provision for Section 12–305 of the Tax–General Article is set forth in Section 13–1014 of the Tax–General Article. *Id.* at 133–34, 784 A.2d at 647. With regard to the willfulness of the possession or transportation of unstamped cigarettes, the Court of Special Appeals relied on this Court's decision in *Deibler v. State,* 365 Md. 185, 776 A.2d 657 (2001) to conclude that the term "willfully" as used in Sections 13–1014 and 13–1015 of the Tax–General Article means that the conduct was purposeful, rather than inadvertent; willful conduct does not require a knowing violation of a legal duty. *See id.* at 142, 784 A.2d at 651.

We granted certiorari, *Chen v. State,* 368 Md. 239, 792 A.2d 1177 (2002) to consider the following questions:

1.  Did the Court of Special Appeals err in concluding that the penalty provision for violating § 12–305(a) of the Tax–General Article which prohibits the "possession" of unstamped cigarettes, is found in § 13–1014 of the same article even though § 13–1014 specifically penalizes only "willful" possession of unstamped cigarettes?

2.  Does the term "willful" as used in § 13–1015 of the Tax–General Article require an intentional violation of a known legal duty and if so, is the evidence sufficient to convict Mr. Chen of violating this statute?

For the reasons set forth below, we answer both questions in the negative and affirm the decision of the Court of Special Appeals.

## II.  Discussion

◼ The sum and substance of petitioner's argument is that Section 12–305(a) of the Tax–General Article does not contain a penalty provision, and that there can be no crime where there is no punishment. Thus, petitioner contends that he could not be convicted for a violation under Section 12–305(a). We disagree, for we find that the penalty provision for a

violation of Section 12–305(a) is set forth in Section 13–1014 of the same article.

An examination of the relevant statutory provisions and legislative history of the cigarette tax illustrates this point. The primary goal of statutory interpretation is to ascertain the legislature's intent in enacting the statute. *See Beyer v. Morgan State University,* 369 Md. 335, 349, 800 A.2d 707, 715 (2002); *Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423, 429 (1995). When engaging in statutory interpretation, we look first at the language of the relevant statutory provision or provisions. *See Huffman v. State,* 356 Md. 622, 628, 741 A.2d 1088, 1091 (1999)("Every quest to discover and give effect to the objectives of the legislature begins with the text of the statute."). In so doing, we must examine all of the relevant portions of the legislative language together, "giving effect to all of those parts if we can, and rendering no part of the law surplusage." *Adamson v. Correctional Med. Services, Inc.,* 359 Md. 238, 252, 753 A.2d 501, 508 (2000)(quoting *Sinai Hosp. of Baltimore v. Dept. Of Employment and Training,* 309 Md. 28, 39–40, 522 A.2d 382, 388 (1987)). Two statutory provisions concerning the same subject matter are considered to be *in pari materia* and must be interpreted accordingly. *See Breitenbach v. N.B. Handy Co.,* 366 Md. 467, 481, 784 A.2d 569, 577 (2001)("when we are called upon to interpret two statutes that involve the same subject matter, have a common purpose, and form part of the same system, we read them *in pari materia* and construe them harmoniously")(quoting *State v. Thompson,* 332 Md. 1, 7, 629 A.2d 731, 734 (1993)). Thus, we turn our attention to the language of Sections 12–305(a) and 13–1014 of the Tax–General Article.

Maryland Code (1988, 1997 Repl.Vol.) Section 12–305 of the Tax–General Article provides:

(a) *Possession or sale of unstamped cigarettes.*—Unless otherwise authorized under this title, a person may not possess, sell, or attempt to sell unstamped cigarettes in the State.

(b) *False tax stamps.*—A person may not make, cause to be made, or procure an altered or counterfeited tax stamp.

(c) *Use or possession of false tax stamps.*—A person may not knowingly or willfully use, transfer, or possess an altered or counterfeited tax stamp.

Section 13–1014 of the Tax–General Article states:

(a) *In general.*—A person who *willfully* possesses, sells, or attempts to sell unstamped or improperly stamped cigarettes in the State in violation of Title 12 of this article is guilty of a misdemeanor and, on conviction, is subject to a fine not exceeding $1,000 or imprisonment not exceeding 1 year or both.

(b) *Separate offense.*—Each day that a violation under this section continues constitutes a separate offense.

(emphasis added).[1]

Petitioner argues that when Sections 12–305 and 13–1014 of the Tax–General Article of the Maryland Code were enacted in 1988, only the willful possession of unstamped cigarettes was subject to penalty.

In 1988, the General Assembly recodified the existing tax laws contained in Maryland Code (1957, 1980 Repl.Vol., 1987 Cum.Supp.) Article 81 and created the new Tax–General Article. *See* 1988 MD. LAWS, ch. 2. As such, the General Assembly

---

1.  Maryland provides an exception for the possession and transportation of unstamped cigarettes applicable to those individuals or entities licensed as wholesalers pursuant to Section 16–205(a) of the Business Regulation Article. Under this exception, such individuals or entities are authorized to:

    (1) act as a wholesaler;

    (2) buy unstamped cigarettes directly from a cigarette manufacturer;

    (3) hold unstamped cigarettes;

    (4) buy tobacco tax stamps as authorized by § 12–303 of the Tax–General Article;

    (5) transport unstamped cigarettes in the State;

    (6) sell unstamped cigarettes to another licensed wholesaler if the Comptroller specifically authorizes; and

    (7) upon approval of the Comptroller, designate a licensed manufacturer to act as its agent for the stamping and distribution of cigarettes.

    Md.Code (1992, 1998 Repl.Vol.) § 16–206(f) of the Bus. Reg. Art.

reorganized and reworked the statutory provisions which now comprise the Tax–General Article so as to streamline the content. *See id.* (setting forth the purpose of the legislation as adding a new Article to the Annotated Code of Maryland, to be designated and known as the "Tax–General Article"). Thus, in reorganizing and recodifying the laws governing taxes imposed on cigarettes, the General Assembly did not express any intent to substantively alter the effect of this provision. In the Tax–General Article, Title 12 governs the taxes imposed on tobacco, while Title 13 discusses the procedures for enforcing the various taxes on tobacco and otherwise, as well as establishing the sanctions and penalties attendant to violations of the Tax–General Article. *See* Md. Code (1988, 1997 Repl.Vol.), §§ 12–101 et seq. of the Tax–Gen. Art.; and §§ 13–101 et seq. of the Tax–Gen. Art.

The present version of Section 12–305(a) of the Tax–General Article was derived from Maryland Code (1957, 1980 Repl. Vol.) Art. 81, § 438, which provided in relevant part:

(a) *Purchase for and attachment to smallest container to be sold; sale or display of unstamped cigarettes; purchase of stamps from person other than Comptroller.*—No distributor shall sell, offer or display for sale in this State any cigarettes until he shall have purchased the proper stamp or stamps from the Comptroller, and affixed it or them to the smallest container of such cigarettes in such manner as may be prescribed by the Comptroller.

No other person *shall possess,* ... in this State any unstamped or improperly stamped cigarettes except as provided in §§ 432(a), (b), (c), (d), 450, 451, 455, 456 and 456A of this subtitle.

(emphasis added). As is the case with the current provision governing the possession of unstamped cigarettes, Section 438 did not use the word "willfully." Instead, the penalty provision was contained in Article 81, Section 463, which provided:

(a) Any person who ... *shall wilfully and knowingly have in his possession* any unstamped or improperly stamped cigarettes except as allowed in this subtitle, or any person

who shall violate any other provision of § 438(a) of this subtitle, shall be guilty of a misdemeanor and upon conviction shall be fined not more than $1000.00 or imprisoned for not more than one year, or both. Every person shall be deemed guilty of a separate offense for each and every day or any part thereof that any such violation continues.[2]

Md.Code (1957, 1980 Repl.Vol.) Art. 81, § 463(a)(emphasis added).[3]

The interplay of the statutory provision governing the unlawful possession of unstamped cigarettes and the statutory provision setting forth the penalty attendant to such violations has remained unchanged. Although Section 463(a) utilized the terms "wilfully" and "knowingly" and the current version of the statute refers solely to persons who "willfully" possess unstamped cigarettes, the force and effect of the statutory scheme remains intact; those individuals who willfully possess unstamped cigarettes are subject to the penalty provision of Section 13–1014 of the Tax–General Article. Section 13–1014(a) by its very terms incorporates the provisions of Title 12 with reference to possession of unstamped cigarettes.[1]

---

**2.** As we have noted in our decisions in *Perry v. State,* 357 Md. 37, 52 n. 7, 741 A.2d 1162, 1170 n. 7 (1999), and *Deibler v. State,* 365 Md. 185, 188 n. 1, 776 A.2d 657, 659 n. 1 (2001), it is acceptable to spell the word "willfully" or "wilfully." It is preferable to use "willfully" or "willful." Thus, we shall use the preferred spelling throughout this opinion unless quoting a statute or case which uses the one-l version.

**3.** The statutory language of Sections 438 and 463 remained virtually unaltered since the enactment of the State Tobacco Tax Act in 1958. *See* Md.Code (1957, 1969 Repl.Vol.) Art. 81, §§ 438 and 463; Md.Code (1957, 1965 Repl.Vol., 1969 Cum.Supp.) Art. 81, §§ 438 and 463; Md.Code (1957, 1965 Repl.Vol.) Art. 81, §§ 438 and 463; Md.Code (1957, 1965 Cum.Supp.) Art. 81, §§ 438 and 463; 1958 Md Laws ch. 1, § 4 (creating the "State Tobacco Tax Act").

**4.** Petitioner argues that "[f]ew, if any, citizens would know that nonresidents of this state cannot travel through Maryland with more than one carton of cigarettes that do not bear a tax stamp from the State of Maryland." We held long ago that Maryland's statutory prohibitions concerning the possession and transportation of unstamped cigarettes were clear and accessible by persons of common intelligence, and constitutional. *See State v. Sedacca,* 252 Md. 207, 215–17, 249 A.2d

Petitioner argues that "[f]ew, if any, citizens would know that nonresidents of this state cannot travel through Maryland with more than one carton of cigarettes that do not bear a tax stamp from the state of Maryland." We held long ago that Maryland's statutory prohibitions concerning the possession and transportation of unstamped cigarettes were clear and accessible by persons of common intelligence, and constitutional. *See State v. Sedacca,* 252 Md. 207, 215–217, 249 A.2d 456, 462–63 (1969)(explaining the constitutionality of the regulatory scheme by stating that it "is a reasonable one, is one with which honest and law abiding citizens can readily comply and is no impediment to the free flow of trade and commerce between the several States").

We conclude, therefore, that the penalty provision of Section 13–1014 of the Tax–General Article is applicable to possession of unstamped cigarettes in violation of Section 12–305 of the Tax–General Article.

## III.  Willfulness

■ We now consider petitioner's contention that the phrase "willfully transports" as used in Section 13–1015 of the Tax–General Article requires a violation of a known legal duty. Petitioner argues that in order to prove a violation of Section 13–1015 of the Tax–General Article, the State would have to prove that he *knew* it was illegal to transport unstamped cigarettes through Maryland.[5]

---

456, 462, 463 (1969)(explaining the constitutionality of the regulatory scheme by stating that it "is a reasonable one, is one with which honest and law abiding citizens can readily comply and is no impediment to the free flow of trade and commerce between the several States."). Indeed, the previous versions of the statute prior to the 1988 recodification were far more cumbersome than the current version. *Compare* Maryland Code (1957, 1980 Repl.Vol.) Art. 81, §§ 438, 43 and 463 *with* Maryland Code (1988, 1997 Repl.Vol.) §§ 12–305 and 13–1014.

5.  As a collateral matter, petitioner urges that the willfulness requirement of Section 13–1014 would not be met in the situation in which an individual knows that it is illegal to transport unstamped cigarettes into another state, such as New Jersey, but does not know that it is illegal to drive through Maryland with unstamped cigarettes. The State, howev-

■ When construing an undefined statutory term, the term should be given "the contextual meaning most probably intended by the Legislature." *Deibler,* 365 Md. at 195, 776 A.2d at 663. Section 13–1015 provides:

---

er, advances the position that Section 13–1015 of the Tax–General Article is a general intent crime, such that willful refers simply to intentional volitional acts.

This Court has relied upon the following distinction between general intent and specific intent crimes:

A specific intent is not simply the intent to do the immediate act but embraces the requirement that the mind be conscious of a more remote purpose or design which shall eventuate from the doing of the immediate act. Though assault implies only the general intent to strike the blow, assault with intent to murder, rob, rape or maim requires a fully formed and conscious purpose that those further consequences shall flow from the doing of the immediate act. To break and enter requires a mere general intent but to commit burglary requires the additional specific intent of committing a felony after the entry has been made. A trespassory taking requires a mere general intent but larceny (or robbery) requires the specific *animus furandi* or deliberate purpose of depriving the owner permanently of the stolen goods.

\* \* \*

The larger class "specific intent" includes such other members as 1) assault with intent to murder, 2) assault with intent to rape, 3) assault with intent to rob, 4) assault with intent to maim, 5) burglary, 6) larceny, 7) robbery and 8) the specific-intent-to-inflict-grievous-bodily-harm variety of murder. Each of these requires not simply the general intent to do the immediate act with no particular, clear or undifferentiated end in mind, but the additional deliberate and conscious purpose or design of accomplishing a very specific and more remote result.

*Harris v. State,* 353 Md. 596, 603–04, 728 A.2d 180, 183 (1999)(quoting *Smith v. State,* 41 Md.App. 277, 305–06, 398 A.2d 426, 442–43 (1979)); *accord Shell v. State,* 307 Md. 46, 62–63, 512 A.2d 358, 366 (1986). Thus, in order to be classified as a "specific intent" crime, the action requires "some specific mental element or intended purpose above and beyond the mental state required for the mere *actus reus* of the crime itself." *Wieland v. State,* 101 Md.App. 1, 39, 643 A.2d 446, 464–65 (1994).

We agree with the State that the statutory language of Section 13–1015, which does not require any additional purpose or goal other than the willful transportation of unstamped cigarettes, expresses the legislature's intent to make such offense a general intent crime. *See Harris,* 353 Md. at 606 n. 3, 728 A.2d at 185 n. 3 (explaining that when the General Assembly elects to create a specific intent crime, it uses "explicit language to indicate the required specific intent"). There is no such language requiring proof of specific intent in Section 13–1015.

A person who willfully transports in the State unstamped cigarettes in violation of § 16–219 of the Business Regulation Article is guilty of a felony and, on conviction, is subject to a fine not exceeding $25 for each carton of cigarettes transported or imprisonment not exceeding 1 year or both.

Md.Code, § 13–1015 of the Tax–Gen. Art.

In *Sedacca, supra,* we were called upon to consider the constitutionality of the predecessor provision to Section 13–1015, namely Maryland Code (1957, 1965 Repl.Vol.) Art. 81, Section 455. *See* 252 Md. at 212–13, 249 A.2d at 460–61. This provision stated in relevant part:

Every person who shall transport cigarettes upon which a tax is imposed by this subtitle, not stamped as required by this subtitle upon the public highways, roads or streets of this State shall have in his actual possession invoices or delivery tickets for such cigarettes, which shall show the true name and address of the consignor or seller, the true name of the consignee or purchaser, the quantity and brands of the cigarettes so transported. If the cigarettes are consigned to or purchased by any person in Maryland such purchaser or consignee must be a person who is authorized by the State Tobacco Tax Act to possess unstamped cigarettes in this State. In the absence of such invoices or delivery tickets, or, if the name or address of the consignee or purchaser is falsified or if the purchaser or consignee in this State is not authorized to possess unstamped cigarettes, the cigarettes so transported shall be subject to confiscation. . . .

Transportation of cigarettes from a point outside this State to a point in some other state will not be considered a violation of this section provided that the person so transporting such cigarettes has in his possession adequate invoices, bills of lading or delivery tickets which give the true name and true address of such out-of-State seller or consignor and such out-of-State purchaser or consignee. . . .

Md.Code (1957, 1965 Repl.Vol.) Art. 81, § 455; *see Sedacca,* 252 Md. at 214, 249 A.2d at 461 (explaining that "Section 455 is

an important provision for the enforcement of the cigarette tax ... it applied to all unstamped cigarettes transported on the State's highways so that invoices or delivery tickets were required for all unstamped cigarettes whether or not they might be ultimately determined to be subject to exemption under the statute"). The statutory language of Section 455 remained virtually unaltered for over twenty years from its enactment in 1958. *See* Md.Code (1957, 1980 Repl.Vol.) Art. 81, § 455; Md.Code (1957, 1969 Repl.Vol.) Art. 81, § 455; Md.Code (1957, 1965 Repl.Vol.) Art. 81, § 455; 1958 MD. LAWS ch. 1, § 4. The term "willfully" was added to the statutory provision penalizing the transportation of unstamped cigarettes in 1988, when the General Assembly created the Tax General Article of the Maryland Code. *See* 1988 MD. LAWS, ch. 2. The Revisor's Note specifically stated, "This section is new language derived without substantive change from the fourth sentence of former Art. 81, § 455, as that sentence related to crimes and offenses." 1988 MD. LAWS, ch. 2 at 615.

With respect to the specific definition of the word "willfully", we recently had occasion to consider the various definitions ascribed to willful conduct in *Deibler v. State*, 365 Md. 185, 776 A.2d 657 (2001). Petitioner asserts, however, that the *Deibler* decision is not controlling in the case *sub judice*. We disagree.

In *Deibler*, we were concerned with whether the concept of willfulness as used in the Maryland Wiretap Act, Maryland Code (1974, 1998 Repl.Vol.), Section 10–401, et. seq. of the Courts and Judicial Proceedings Article required that the defendant know that his or her action in violation of the Act is prohibited by statute. *See Deibler*, 365 Md. at 188, 776 A.2d at 659. Among other prohibited conduct, the Wiretap Act makes it unlawful to "[w]ilfully intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." Md. Code, § 10–402(a)(1) of the Cts. & Jud. Proc. Art. The Wiretap Act does not contain a provision defining the term "wilfully." We discussed several interpretations of willful conduct

employed by the courts. The interpretation which we found most applicable to the Wiretap Act was discussed as follows:

> The third interpretation "requires only that the act be committed voluntarily and intentionally as opposed to one that is committed through inadvertence, accident, or ordinary negligence." Under that approach, "as long as there is an intent to commit the act, there can be a finding of willfulness even though the actor was consciously attempting to comply with the law and was acting with the good faith belief that the action was lawful." What is required is "an objective intent to commit the act but not necessarily a knowledge that the act will bring about the illegal result."

*Deibler,* 365 Md. at 193, 776 A.2d at 661 (quoting S. Brogan, *An Analysis of the Term "Willful" in Federal Criminal Statutes,* 51 NOTRE DAME LAWYER 786 (1976)). Ultimately, we concluded that an interception was willful for purposes of the Wiretap Act where it was not "otherwise specifically authorized" so long as "it is done intentionally—purposely." *Id.* at 199, 776 A.2d at 665.

■ Like the Maryland Wiretap Act, the Tax–General Article does not set forth a specific definition of "willfully" as used in the statute. Thus, while the inadvertent or accidental possession and / or transportation of unstamped cigarettes would not be a violation of the Tax–General Article, any knowing possession or transportation of unstamped cigarettes is considered a violation of Maryland law—without regard to an individual's familiarity with the text of the Tax–General Article. As noted by the trial court at the December 18, 2000 hearing on petitioner's motion to dismiss and suppress evidence, petitioner failed to raise any defense that his transportation of the unstamped cigarettes was mistaken, inadvertent, or otherwise accidental. Therefore, under the facts and circumstances of this case, it cannot be said that petitioner's conduct was anything but willful. Accordingly, we affirm the decision of the Court of Special Appeals.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND IN THE*

*COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.*